No. 33,703

L. A. RUPF and CARRIE I. RUPF, Partners as The Rupf Hatcheries, *Appellants,* v. R. E. MASON and THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, *Appellees.*

(78 P. 2d 848)

Opinion filed May 7, 1938.

*J. B. Wilson,* of Lawrence, for the appellants.

*R. E. Melvin* and *George K. Melvin,* both of Lawrence, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action for recovery of money alleged to be due plaintiffs from defendant Mason growing out of operations under the contract hereafter referred to. From a judgment in favor of defendant Mason the plaintiffs appeal.

Under date of January 7, 1933, plaintiffs and defendant Mason entered into a contract for operating a hatchery business at Lawrence, Kan. So far as is now important, the contract provided that plaintiffs should furnish certain equipment and capital and should have general supervision of the business. Defendant Mason was to operate the business, keep accurate account thereof, and make daily report to the plaintiffs at Ottawa, Kan. Defendant Mason was to furnish a bond of $4,000 to the plaintiffs to indemnify them against any loss occasioned by his failure to properly account for moneys received by him. Provision was made respecting payment of operating expenses, and for monthly audit, and for semiannual settlements. Either party could terminate the contract on thirty days' notice. For his compensation, defendant Mason was to receive one half the net profits of the business, to be paid him on the specified accounting dates, and he was permitted to draw the sum of $75 per month as an expense account, providing the profits of the business equaled that amount, and the same was to be charged against and considered

part of his compensation. He agreed to pay all of his compensation over $75 per month to the plaintiffs until he had paid them $2,250, and in addition one half of the working capital furnished by plaintiffs, and when he had so fully performed he should become owner of one half of the business. The contract further provided:

"It being understood, however, that in case of the termination of said contract by either party, as hereinbefore provided, and necessary settlement and accounting therefrom, the value of said equipment, stock, fixtures, etc., shall be determined as of the date of said termination."

In compliance with the contract, defendant Mason procured the requisite bond from the defendant surety company. Operations under the contract continued about one year, when defendant Mason gave notice of cancellation.

In July, 1934, plaintiffs brought their action against the defendants, in which, among other matters, they charged defendant Mason with failing to account for and with embezzling the sum of $636.74, and that claim therefor had been made against the defendant surety company. Defendant answered alleging that the contract was for a joint venture and the parties thereto were partners; that another action was pending between the same parties concerning the same contract and the two actions should be considered together and an accounting had. He denied he owed plaintiffs anything and alleged he had a partial ownership of the partnership property and that upon determination of the partnership interest plaintiffs were indebted to him. He prayed for an accounting and for judgment for the amount found due him on accounting.

At the trial, both of the actions referred to in defendant Mason's answer were tried together. It was agreed that the audits called for by the contract had been made and were mathematically correct. Plaintiffs concede that for the first accounting period there were net profits and that Mason's share was $850.90, and that he withdrew $392.67, leaving a balance due him of $57.33 on his $75 per month drawing account for that period, and that he was also entitled to be reimbursed $60 for car expense and $58.50 for boarding laborers. It was also conceded by both parties that during the second accounting period Mason withdrew $574.18, and plaintiffs contend there were no net profits justifying any such withdrawal. Under plaintiff's theory, defendant Mason was indebted to them in the sum of $472.67. Defendant Mason claimed the right to withdraw the $574.18, and under his figures, if there were a partnership, he was

indebted in the sum only of $71.77, but if there were no partnership, he was not indebted at all and moneys were due him. After hearing some evidence as to various matters arising out of the operations, and after examining the audits, the trial court made its computation, finding there was due to defendant Mason from the plaintiffs the sum of $127.90; that Mason had not wrongfully appropriated any moneys, and that no cause of action had been proved against the defendant surety company. Judgment was rendered accordingly. Plaintiffs' motion for a new trial was denied and they appeal.

Appellants first insist that the contract did not create a partnership between the parties to it. The trial court did not make its computation on the basis of a partnership, and we shall consider the contract only as being one for employment coupled with a right to purchase an interest in certain property. As appears from the computation hereafter stated, it would make no difference in the final result. Appellants argue that Mason, not having fully paid for a one-half interest in the property, and having of his own volition quit his employment, forfeited any portion of the net earnings otherwise applicable to the payment of the purchase price. To arrive at that conclusion, they argue that the clause of the contract above quoted is meaningless, has nothing to do with the construction of the contract and should be ignored. The trial court gave effect to the quoted provision and so do we. It is quite evident that it was intended that either party might withdraw from further operations under the contract by giving requisite notice. And it is quite as evident that in the event of termination by either party, it was not intended that appellants should be allowed to keep the payments of consideration made by Mason, and should not be compelled to account therefor, for there is no clause or provision to that effect. Although the quoted clause was not very complete in its terms, it was included as a part of the contract and must be given effect. We believe that it may reasonably be construed to mean that in event of termination of the contract there was to be an accounting between the parties, which was to include valuation of the property being purchased. There is no claim the property was not as valuable when the accounting was made as when the contract was entered into, and so we assume the value was constant. Although the contract provided that Mason might withdraw $75 per month if

the profit for the accounting period amounted to that much, it did not provide that if earnings of a less amount were made he had no share therein, only that he had no drawing account for that period. Even though Mason withdrew moneys which under the contract should have been applied to the purchase price of one half of the equipment, in any accounting the question would finally be, What was his share of the earnings and how much did he actually receive? If there be a difference in his favor, that is what he is entitled to on an accounting.

It is conceded, and the audits show, that during the first accounting period Mason was entitled to withdraw as wages $450; that he only withdrew $392.67, leaving due to him $57.33, and on that basis the net profits for the first period were $1,701.81. For the second and final period by charging Mason with withdrawing $574.18 and by charging against the business a telephone bill of $1.10 which was Mason's personal bill, there was an apparent deficit of $146.45. As the earnings did not justify the withdrawal, nor was the telephone bill a proper charge, there was an apparent balance of $428.83. It is conceded, however, that against this amount should be charged the balance of $57.33 due but not paid Mason as salary and not covered in the first accounting period, as well as the car expense of $60 and the board bill of $58.50 due to, but not paid, Mason. The result is an actual net gain for the last period of $253, or a total gain for the entire time of $1,954.81, of which Mason's share was $977.40.

During the first period Mason actually received $392.67 and during the second period $574.18, and he was also chargeable with the telephone bill of $1.10, or a total of $967.95. The difference in his favor was $9.45. As he had not been paid for the car expense of $60 and the board bill of $58.50, he was entitled to that much more, or a total of $127.95.

It thus appears the conclusion of the trial court was correct, and its judgment is affirmed.